RECORD NUMBER: 17-4579

# United States Court of Appeals
### *for the*
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

AQUABEUS MOORE,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

# OPENING BRIEF OF APPELLANT

SHARNAISHA NAKI RICHARDSON-BAX
BAX LAW FIRM, PA
2 Merchant's Lane
Suite 210
Beaufort, SC 29907
(843) 522-0980
naki.baxlaw@gmail.com

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

JURISDICTION.................................................................................... 1

STATEMENT OF ISSUES ON APPEAL ............................................ 1

STATEMENT OF THE CASE.............................................................. 2

STATEMENT OF FACTS .................................................................... 3

SUMMARY OF THE ARGUMENT ..................................................... 6

    Appellant's Rule 29 Motion ........................................................... 6

    Application of  924(c)...................................................................... 7

    Admittance of Firearm into Evidence ........................................... 7

    Admittance of Demonstrative Evidence......................................... 8

    Appellant's Rule 33 Motion ........................................................... 9

ARGUMENT ....................................................................................... 9

    I.    Did the court err in denying Appellant's Rule 29 motion and finding that government offered evidence of Appellant's prior knowledge of the use of a firearm for purposes of the 924(c) sentencing enhancement to go to the jury where there is no such evidence ever produced in the trial?  .................................................. 9

    II.    Was the application of the 924(c) enhancement for a Hobbes Act Robbery constitutional?.............................................................. 13

    III.    Did the court err in admitting a firearm into evidence and thus presented to the jury where there was no evidence that the weapon in question was used in commission of the crime charged?............................................................................... 16

i

III.    Did the court err in admitting multiple exhibits produced by law enforcement using manipulated information and generated by the government into evidence?............................................................ 17

IV.     Did the court err in declining to grant Defendant a new trial based on the repeated misleading forensic testimony presented to the jury by the FBI's DNA expert where Defendant showed clear evidence that this testimony was in contradiction to the FBI's protocols on accurate forensic testimony?.............................. 19

CONCLUSION ....................................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Bourjaily v. United States*,
     483 U.S. 171 (1987)........................................................................ 12

*Garraghty v. Johnson*,
     830 F.2d 1295 (4th Cir. 1987) ..................................................... 16

*Glasser v. United States*,
     315 U.S. 60 (1942)........................................................................ 12

*Johnson v. United States*,
     135 S. Ct. 2551 (2015)............................................................. 7, 14

*Rosamond v. U.S.*,
     188 L.Ed. 2d 248 (2014)..................................................... 7, 11, 12

*Sessions v. Dimaya*,
     584 U.S. ____ (2018)................................................................ 7, 14

*U.S. v. O'Connor*,
     Op. 16-3300 (2017) ...................................................................... 14

*United States v. Alerre*,
     430 F.3d 681 (4th Cir. 2005) ....................................................... 10

*United States v. Burgos*,
     94 F.3d 849 (4th Cir. 1996) ......................................................... 12

*United States v. Sriyuth*,
     98 F.3d 739 (3d Cir. 1996) ........................................................... 16

*United States v. Wiseman,*
     172 F.3d 1196 (1999) ................................................................... 11

**Rules and Statutes**

18 U.S.C. §2 ................................................................................. 1

18 U.S.C. § 16(b) ...................................................................... 14

18 U.S.C. § 922 (g)(1) ............................................................... 5

18 U.S.C. § 924(c) ........................................................... passim

18 U.S.C. § 924(c)(1) ............................................................. 1, 9

18 U.S.C. §1951 ...................................................................... 1, 13

18 U.S.C. § 3553(a) ............................................................. 7, 15

18 U.S.C. § 3742 ......................................................................... 1

28 U.S.C. § 1291 ......................................................................... 1

Fed. R. Crim. P. 29............................................................. passim

Fed. R. Crim. P. 29(a) ............................................................ 12

Fed. R. Crim. P. 33............................................................ 9, 19, 21

FRE 403 ............................................................... 8, 16, 17, 22

FRE 1006 ............................................................................... 17

**Constitutional Amendments**

Eight Amendment ..................................................................... 7

## JURISDICTION

This appeal is from the final judgment in a criminal case filed on August 30, 2017. Jurisdiction in the district court was based upon 18 U.S.C. §§2, 1951 and 924(c)(1). Appellate jurisdiction is based on 18 U.S.C. § 3742 and 28 USC § 1291.

## STATEMENT OF ISSUES ON APPEAL

I. **Did the court err in denying Appellant's Rule 29 motion and finding that government offered evidence of Appellant's prior knowledge of the use of a firearm for purposes of the 924(c) sentencing enhancement to go to the jury where there is no such evidence ever produced in the trial?**

II. **Was the application of the 924(c) enhancement for a Hobbes Act Robbery constitutional?**

III. **Did the court err in admitting a firearm into evidence to be presented to the jury where there was no evidence that the weapon in question was used in commission of the crime charged?**

IV. **Did the court err in admitting multiple exhibits produced by law enforcement using only select parts of evidence obtained in the investigation and manipulated into forms best suited to support the government's case into evidence?**

1

**V. Did the court err in declining to grant Defendant a new trial based on the repeated misleading forensic testimony presented to the jury by the FBI's DNA expert where Defendant showed clear evidence that this testimony was also in contradiction to the FBI's protocols on accurate forensic testimony?**

## STATEMENT OF THE CASE

In the case at bar, the Appellant was one of three individuals named in a five-count indictment which was filed in the District Court of South Carolina on June 10, 2015 for the commission of robbery of two different jewelry store robberies. JA 19. The Appellant was charged for his alleged involvement in the conspiracy of robbing the jewelry stores and its employees and with possession of a firearm in the furtherance of those robberies. JA 19-24.

The lead Defendant, Charles Johnson, was tried on June 16, 2016 and found guilty. On April 27, 2017, after a 4-day trial, Appellant was also convicted on all counts. A pre-sentencing report was prepared and Appellant filed objections. JA 201. Appellant was sentenced on August 30, 2017. At the hearing, the court overruled all of Appellant's objections. JA 136-159. Appellant was sentenced to a total term of Three Hundred Eighty-Four (384) months and One (1) day, said term consisting of 1 day as to Counts One, Two, and Four to run concurrently; 84 months

2

as to Count Three to run consecutively to all other counts; and 300 months as to Count Five, to run consecutively to all other counts. JA 160-164.

A Notice of Appeal was filed on September 11, 2017. JA 165. Undersigned counsel was appointed by the US Court of Appeals for the Fourth Circuit on September 13, 2017.  Upon the discovery of new evidence, Appellant filed a Rule 33 Motion on January 25, 2018 in the district court and requested that this court remand this matter so that the district court could make a determination on the pending Rule 33 motion.  JA 169-170.  The Honorable Richard M. Gergel of the South Carolina District court issued his order denying Appellant's Rule 33 motion on March 22, 2018. JA 192-195.

This brief follows.


## STATEMENT OF FACTS

The facts presented at trial were as follows:  Beginning in 2014, Charles Johnson, aka Adam White, a known drug dealer, began recruiting or attempting to recruit, several people in assisting him in the casing, planning, and eventual robbery of jewelry stores across the country.  At some point in early January 2015, he became acquainted with Appellant while spending time in Atlanta.

Around the same time, Mr. Johnson began a relationship with a Talisha Googer, an exotic dancer from Atlanta.  Ms. Googer testified at trial that she in fact had traveled to Charleston with Mr. Johnson and had entered one of the jewelry

3

stores there, at his request, and to take note of the security measures in place. Ms. Googer further testified that she did not really know Appellant and had only met him on one or two prior occasions.

In Columbia, South Carolina, at approximately 10:45 a.m. on the morning of February 19, 2015, a car pulled up on Main Street and two masked individuals were caught on security cameras exiting the vehicle. Subsequently, Sylvan Jewelers was robbed by two individuals, one of whom was reportedly armed. After smashing glass cases that contained Rolex watches and putting them into a cloth bag, both individuals exited the store. A total of 36 Rolex watches valued at approximately $410,000.00 was taken from the store.

On the morning of March 4, 2015, at approximately 4:00 p.m. in Charleston, South Carolina, MP Demetre Jewelers was robbed by two individuals, one of whom appeared to be armed. Once again, the individuals targeted the Rolex watches. A total of 52 Rolex watched valued at approximately $715,550.00 was stolen.

Moments of the robbery were caught on the security footage of cameras inside the store. Two men were seen getting into a vehicle whose movements were later tracked using City of Charleston traffic cameras and other security cameras. The vehicle believed to be involved in this robbery, a van, was later found abandoned in downtown Charleston.

4

Law enforcement was able to trace the owner of the van to a dealership in Georgia where it was reportedly sold to an Adam White. Using a cell phone number provided to the seller for Mr. White, the FBI was able to track the number to Charles Johnson. Law enforcement was then later able to identify the vehicle used in the earlier Sylvan robbery and track it to a seller in Georgia who identified Mr. Johnson as the buyer of the vehicle.

The government presented evidence that Appellant had accompanied Mr. Johnson when he bought one of the vehicles that was eventually found to have been identified in the robberies. Additionally, the Government's expert witnesses testified that Mr. Moore's fingerprints and DNA evidence were found on the minivan believed to be used in the Demetre Jewelers robbery.

Using the cell phone number from the vehicle purchases, law enforcement obtained massive amounts of cell phone data in this case. In that data, there were numerous exchanges between co-Defendant Charles Johnson and many individuals including Appellant, Talisha Googer, and co-Defendant Jerry Harbin.

Based on the information from the cell phone extractions, Appellant was arrested on March 25, 2015, near Atlanta, Georgia. At the time of his arrest, he had a firearm in his possession, identified as a Heckler & Koch USP compact 9mm pistol. Appellant was detained at a federal holding facility and charged with the federal offense of Felon in Possession of a Firearm (18 U.S.C. § 922 (g)(1). He

remained incarcerated in Georgia until after he had entered a guilty plea on March 16, 2016. On December 6, 2016, he was sentenced to 41 months imprisonment for that offense. Trial counsel was appointed on June 27, 2016.

The trial of this case began on April 24, 2017. Testimony concluded on April 27, 2017. The jury returned with a verdict of guilty on all counts shortly thereafter. Appellant was sentenced on August 30, 2017.

The bulk of the evidence presented by the government was cell phone data. The government presented evidence from the cell phones of Charles Johnson, Talisha Googer, and two phones that they attributed to Appellant. The government also presented cell tower evidence as well as call logs from numerous individual cell phones. These thousands of pages of data were analyzed and reduced into a spreadsheet and a series of marked maps solely by law enforcement working on behalf of and at the behest of the U.S. Attorneys prosecuting the case.

## SUMMARY OF THE ARGUMENT

### Appellant's Rule 29 Motion

The government presented no evidence that Appellant had prior knowledge of the intended use of a gun during the commission of the robberies for which he was convicted. The government is required to present evidence, not mere supposition, that Appellant had advance knowledge "meaning, knowledge at a time when the accomplice has a reasonable opportunity to walk away." *Rosamond v. U.S.*,

6

188 L.Ed. 2d 248 (2014). Because the government failed to do so, Appellants convictions for the 924(c) offenses should be reversed.

**Application of 924(c)**

Appellant challenged his sentencing under the convictions for the 924(c) offenses as cruel and unusual under the Eight Amendment. The mandatory consecutive sentences fail to adequately take into account the sentencing considerations of 3553(a). It does not adequately take into account Appellant's actual role in the offense undermining the court's sentencing obligation pursuant to 18 U.S.C. § 3553(a). Furthermore, recent case law has found that the underlying offense for which Appellant has been convicted, Hobbs Act Robbery, is not a "crime of violence" in light of the decisions recently handed down in Johnson and Dimaya. In those cases the court found that the definition contained in the residual clause of 924(c) which defines a "crime of violence" as unconstitutionally vague. Therefore, if there is no "crime of violence" as contained in 924(c), then Appellant cannot be assessed the enhanced penalties of 924(c). As such, his convictions under that statute should be overturned.

**Admittance of Firearm into Evidence**

The court erred in allowing a firearm that was found on the Appellant weeks later to be admitted into evidence in this trial. There was no testimony or evidence

submitted in this matter that tied that firearm to the firearm that was used during the robberies in this matter. In fact, there was no evidence submitted that Appellant even had possession of any firearm at the time of these robberies. The only evidence submitted in the trial was a grainy still from a surveillance video in which no definable characteristic could observed. Admitting the firearm into evidence without any basis in fact was more prejudicial than probative and in violation of Rule 403. As such, Appellant's convictions should be reversed and remanded for a new trial.

**Admittance of Demonstrative Evidence**

The court erred in allowing the government to submit clearly demonstrative evidence to the jury for consideration. The government presented multiple charts to the jury under the guise of summarizing cell phone data, including text messages, phone call logs and cell tower data. However, that data was manipulated and annotated by the government's expert witness and was improperly submitted into evidence. All data was not accounted for and the specifically highlighted portions only included data that would enhance the government's theories and did not offer the jury a full picture of the evidence. While those charts may have been appropriate demonstrative tools during the testimony of the respective experts, they should have never been allowed into evidence to be submitted to the jury. Thus, all of Appellant's convictions should be reversed and remanded for a new trial.

8

**Appellant's Rule 33 Motion**

Appellant is entitled to a new trial based on newly discovered evidence. After Appellant's conviction, the FBI sent out a "Letter of Caution" in which the agency highlighted mistakes included in the testimony of their forensic DNA expert, Heather LaSalle. In that letter, the FBI made clear that her testimony was in direct contradiction of their protocol. The FBI further stated that parts of her testimony were misleading and changed the meaning of the facts to which she testified to. The court cannot ignore the importance of DNA testimony in an offense in which Appellant was not directly identified by any witness in this matter. Because Appellant was not afforded the opportunity to explore the misleading testimony submitted by the FBI, Appellant was denied the right to a fair trial. Therefore, Defendant's convictions should be reversed and his case remanded for a new trial.

## ARGUMENT

I.  **Did the court err in denying Appellant's Rule 29 motion and finding that government offered evidence of Appellant's prior knowledge of the use of a firearm for purposes of the 924(c) sentencing enhancement to go to the jury where there is no such evidence ever produced in the trial?**

18 U.S.C. §924(c)(1) provides that: "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be

9

prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence… if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and [i]n the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years."

The scope of review of a district court's denial of a Rule 29 motion is de novo. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005).

At trial, the government presented evidence that in both robberies 2 individuals entered the respective jewelry stores, smashed in the glass cases containing Rolex watches, and exited the store.  During both robberies, both individuals were masked and wore gloves.  There was also testimony from law enforcement and lay witnesses as well as surveillance video that clearly showed that there was at least one other individual who stayed in the vehicle as driver in both robberies.  The US Attorneys prosecuting the Appellant, as well as the detectives and FBI agents who worked the case, all stated to the court that they believed the Appellant was the driver in both robberies.  No one identified Appellant as being one of those individuals who went into the jewelry stores. Additionally, there was no evidence submitted or alluded to by any witness that testified at trial that

10

Appellant actually possessed a weapon at any time during the commission of these crimes.

The government asserted that as an aider or abettor, Appellant knew that a firearm would be used in commission of these crimes. However, there was no testimony submitted to support that assertion. In fact, no testimony was ever solicited or offered that Appellant was aware of a firearm being used in the commission of these crimes. JA 130-131. In *Rosamond v. U.S.*, 188 L.Ed. 2d 248, the court found, "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. This must be advance knowledge—meaning, knowledge at a time when the accomplice has a reasonable opportunity to walk away."

There was no testimony that Appellant had "advance knowledge" that a firearm would be used in the offenses committed. See also *United States v. Wiseman,* 172 F.3d 1196, 1217 (1999) (requiring that the defendant actively participated and knew his confederate would be carrying a gun). "When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he

may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun." *Rosemond* at 1249.

Appellant argued such in his Rule 29 motion. JA. 134-135. "Rule 29 of the Federal Rules of Criminal Procedure directs the court to enter a judgment of acquittal on any offense charged in an indictment if the evidence is insufficient to sustain a conviction of such offense. Fed. R. Crim. P. 29(a). " <u>U.S. v. Tillmon</u>, 2:15-CR-9-9H, EDNC. With no evidence submitted of advance knowledge, Appellant's motion to that respect should have been granted.

Furthermore, even if the court were to assume the Appellant must have been aware a firearm would be used in the second robbery, the Demetre robbery, due to the fact that one had been used in the initial robbery, that is not the standard. Even with the court being required to look at the evidence in the light most favorable to the government, there must be some evidence to support their assertions. "When reviewing a conviction for insufficiency of evidence, the verdict of a jury must be sustained 'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" <u>United States v. Burgos, 94 F.3d 849</u>, 862 (4th Cir. 1996) (citing <u>Glasser v. United States, 315 U.S. 60</u>, 80 (1942), superseded by rule on other grounds as stated in <u>Bourjaily v. United States, 483 U.S. 171</u>, 182 (1987).

There is not even a scintilla of evidence that Appellant had advance knowledge of any weapon being used in the robberies. It must also be noted these were two different robberies that occurred a couple of weeks apart. No gun was visible in the security footage that was taken outside of Sylvan's Jewelers, the site of the first robbery. There was no evidence submitted that a firearm was seen by anyone who was not inside either store. There was no testimony of a conversation, phone message, text or any other communication regarding either robbery that indicated that Appellant had knowledge of a firearm being used in the commission of these offenses. Thus, the court erred in denying Appellant's Rule 29 motion. Appellant's convictions should be reversed and remanded for a new trial.

## II. Was the application of the 924(c) enhancement for a Hobbes Act Robbery constitutional?

Appellant was indicted and found guilty of violations of 18 U.S.C. 1951, commonly referred to as the "Hobbes Act" which defines a robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."

13

The scope of review for matters of law is de novo.  Appellant maintains that the implementation of 924(c) enhanced sentences in this matter is unconstitutional. As discussed in Appellant's earlier argument, Appellant maintains that there was insufficient evidence to find him guilty of use of a firearm during a violent crime.

Additionally, in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), the court found that residual clause of the ACCA was unconstitutionally vague.  In furtherance of that ruling, the court also found the residual clause in 18 U.S.C. § 16(b), which defines a "crime of violence" was unconstitutionally vague. <u>Sessions v. Dimaya</u>, 584 U.S. ____ (2018).  It would only serve to reason that the residual clause of 18 U.S.C. 924(c) which defines a "crime of violence" the same as §16(b) would also be "unconstitutionally vague".  As such, if a Hobbs Act Robbery is not a crime of violence, then Appellant cannot be assessed the enhanced penalties of 924(c). Notably in <u>U.S. v. O'Connor</u>, Op. 16-3300 (2017), the Tenth Circuit Court of Appeals found that a Hobbs Act Robbery is "not a crime of violence".

It is in the consideration of this recent case law, that the court should find that the application of the 924(c) sentencing enhancements in this matter are unconstitutional.

Not withstanding the recent case law, the application of these enhancements are also unconstitutional as they constitute cruel and unusual punishment in violation

14

of the Eighth Amendment of the Constitution. It cannot be argued strenuously enough that the sentencing of an individual to a range which constitutes a mandatory minimum sentence of 32 years for involvement in a crime in which no one was physically hurt or injured and in which they cannot be determined to play any integral role is cruel and unusual punishment. The sentencing of Appellant is not to be considered in a vacuum. In order to adhere to 3553(a), the court is required to consider all circumstances surrounding sentencing. The punishment for murder in the state of South Carolina carries a minimum sentence of only 30 years, yet Mr. Moore is facing a minimum of 32 years in a case where no life was lost, nor was any shots fired, nor was Mr. Moore the principal planner and actor even by the Government's account. This is fundamentally unfair and violates his and everyone else's constitutional rights who are subject to this sentencing statute, particularly in light of the fact that this sentence is required to be *consecutive* to any and all other federal sentences imposed at that time. Moreover, it flies in the face of reason that Appellant is actually punished more severely than the mastermind in this matter, his co-Defendant Charles Johnson.  This does not adequately take into account Appellant's actual role in the offense undermining the court's sentencing obligation pursuant to 18 U.S.C. § 3553(a).

Based on the above, this court should find that the application of the 924(c) enhancement in this matter is unconstitutional and reverse the Appellant's convictions for these offenses.

**III.  Did the court err in admitting a firearm into evidence and thus presented to the jury where there was no evidence that the weapon in question was used in commission of the crime charged?**

"A trial court's rulings on 403 evidence will be reviewed on an abuse of discretion standard." <u>Garraghty v. Johnson</u>, 830 F.2d 1295, 1298 (4th Cir. 1987). Pursuant to Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Testimony in the trial indicated that one of the two individuals who entered and robbed the jewelry stores was armed.  In the trial of this matter, the government moved to admit a firearm that was retrieved when Appellant was arrested almost three weeks after the commission of these offenses. Appellant objected on Rule 403 grounds. JA 110-111.  Appellate courts have found "[t]o determine the admissibility of evidence under Rule 403, the Court must balance (i) the strength of the evidence; (ii) the need for the evidence in light of the contested trial issues and the other evidence available to the government; and (iii) the danger that the evidence will inflame the jurors and cause them to convict on impermissible grounds." <u>United States v. Sriyuth, 98 F.3d 739</u>, 747-48 (3d Cir. 1996).  No testimony was ever elicited to describe the firearm that was used in the robbery.  The only thing presented was a grainy picture.  There was nothing to delineate what type of firearm the picture

appears to show, other than it appeared silver on top (slide covering barrel) and dark on the bottom (handle, trigger) that was used in the crime. There was no indication on what type caliber or model the firearm in question was. There was no testimony offered that a two-toned silver handgun was unusual or rare. There was no indication that the gun in question had anything in common with the gun found on Appellant during his arrest 3 weeks later except its color. Allowing the gun into evidence without any offer of proof that it was indeed the firearm used in the robbery was more prejudicial than probative. It directed the jury to assume that this must be the same gun in order to be admitted into evidence, without any evidence admitted or even offered on which to base that assumption.

The impact of the physical firearm being presented to the jury without any corroboration was more prejudicial than probative. Additionally, it misled the jury. The presentation of the firearm without any clear corroboration was more prejudicial than probative and violated the requirements of FRE 403. As such, Appellant's convictions should be reversed and remanded for new trial.

**IV. Did the court err in admitting multiple exhibits produced by law enforcement using manipulated information and generated by the government into evidence?**

FRE 1006 states that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." In the present case, the government offered

17

several exhibits purporting to summarize cell phone data, including text messages, phone call logs and cell tower data. Appellant asserts that in particular, the cell phone tower data produced by law enforcement that was manipulated and annotated by the government's expert witness was improperly submitted into evidence.

The court erred in allowing this demonstrative evidence to be submitted to the jury. Specifically, the court allowed the government to admit specific charts signifying the alleged direction of travel with specific times and placed Appellant's phone in a specific area. While that expert testified that the evidence could only show a range within which a cell phone was operating, the chart displayed to the jury and admitted into evidence placed Appellant in a specific spot. JA 128-129. Government further went on to highlight avenues of travel --- on a map and extrapolated that path onto a map. All other data that did not support the expert's theory was not referred to or presented to the jury, making it more prejudicial than probative. This is not a mere summary of voluminous records as allowed under the rules but crossed the line into demonstrative evidence that should not have been allowed to be submitted to the jury. Demonstrative evidence becomes misleading outside the context of the testimony that an expert witness can give.

18

**V.  Did the court err in declining to grant Defendant a new trial based on the repeated misleading forensic testimony presented to the jury by the FBI's DNA expert where Defendant showed clear evidence that this testimony was in contradiction to the FBI's protocols on accurate forensic testimony?**

Appellant was convicted in this matter in late April of 2017.  Several months later, Appellant's trial Counsel received email correspondence from the government which included a copy of a letter submitted to the prosecuting AUSA from the FBI Forensics Lab. JA 166-167.  That correspondence purported to discuss errors in the testimony of FBI Forensic DNA analyst and supervisor Heather LaSalle during the trial of Appellant's co-Defendant, Charles Johnson. The letter indicates that an internal investigation for quality assurance purposes revealed that Ms. LaSalle had presented testimony in violation of FBI policy and that such testimony was misleading, specifically as to probability ratios and the matching rates of individuals to evidence in this case.

Upon examination of Ms. LaSalle's expert testimony in Appellant's trial, it appears that her testimony was significantly the same as her testimony in the Charles Johnson's trial.  Therefore, the same errors and concerns are present.  JA 24-43; JA 54-90.

Appellant subsequently filed a Rule 33 motion based on this evidence. JA 169-170.  Appellant argued to the court that based on the nature and obvious complexity of the newly discovered evidence, justice requires that Defendant receive

19

a new trial in this case. It is obvious from her employer's own words that the testimony offered by the FBI expert was misleading. Indeed, the FBI, at the request of the government, submitted a second letter specifically addressing Ms. Lasalle's testimony in Appellant's trial. That correspondence highlighted specific instances where Ms. Lasalle testified in contradiction to the agency's protocol that the agency itself identified as misleading. JA 183-185.

In their response, the government argued that M. Lasalle's testimony would only serve as impeachment evidence, not newly discovered evidence and thus Appellant, was not entitled to any relief as he failed to exercise due diligence in disputing the testimony. JA 171-182. Appellant disagrees. JA 186-191. The Honorable Richard M. Gergel of the South Carolina District court issued his order denying Appellant's Rule 33 motion on March 22, 2018. JA 192-195.

The government's argument that Appellant should have been aware of the problems with the expert's testimony at the time trial requires that Appellant be clairvoyant to know before the supervisors at her own lab, that Ms. Lasalle was testifying inaccurately when Ms. Lasalle specifically testified that this was a new protocol for the FBI. As to the relevance and importance to this evidence, it is clear that these mistakes by Ms. Lasalle were relevant and material. It is not credible that the FBI would go to the lengths that they did to issue the letters of correction after the fact if these mistakes were not relevant and important to the understanding of

20

their results.  The Department of Justice outlined at least 9 times in which the expert testified incorrectly.  While the government maintains that the testimony differences were subtle, the correspondence from the FBI specifically state these "subtle differences technically changes the meaning". JA 183-185.

In the ruling denying Appellant's Rule 33 motion, the district court erred by usurping the province of the jury by deciding that the jurors would not have come to a different conclusion had Appellant had an opportunity to present evidence that the government's expert testified in contradiction of her own agency's protocol.  The ruling also fails to take into account the weight that is afforded to an FBI forensic expert's testimony.  Indeed, when challenged regarding some of her conclusions, the expert stated that the FBI had a new way of quantifying their results.  It was only later, after Appellant's conviction that it was revealed, by *her own agency,* that her testimony was "misleading".

The district court erred in finding that Appellant was not entitled to a new trial based on newly discovered evidence.  Appellant did not receive a fair trial as he was not given the opportunity to fully investigate the implications of what is noted in the correspondence or have an opportunity to flesh out the misleading statements the government's expert witness testified to through cross-examination or have the opportunity to refute the evidence with the possibility of obtaining his own expert.

21

The credibility of the expert's testimony would go directly to address 403 factors. This was not just a simple case of her providing testimony of a different evaluation of her results. This was, according to her own agency, testimony that was inaccurate based on their own protocols. The FBI was concerned enough to issue its own letter of caution regarding her testimony. That is something that is extremely uncommon and the court must take note of that.

Thus, Appellant was stripped of his ability to have a fair trial and the district court erred in denying his right to do so. Based on the above, Appellant's convictions should be overturned and his case remanded for a new trial.

## CONCLUSION

Based on the above, the court should reverse Appellant's convictions and remand this matter for a new trial.

RESPECTFULLY SUBMITTED this 27th day of June, 2018.

> s/ Naki Richardson-Bax
> FEDERAL ID #: 10809
> The Bax Law Firm
> 2 Merchants Parkway Suite 210
> Beaufort, SC 29907
> Phone: (843) 522-0980
> Fax: (843) 217-5815
> ATTORNEY FOR APPELLANT

22

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. __17-4579__      **Caption:** US v. Aquabeus Moore

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,212____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
MS Word 2016_____ [*identify word processing program*] in
Times New Roman, 14 point_____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Naki Richardson-Bax_____

Party Name _appellant_____

Dated: _6/27/2018_____

# CERTIFICATE OF SERVICE

I certify that on <u>6/27/2018</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

| | |
|---|---|
| /s/ Naki Richardson-Bax | 6/27/2018 |
| Signature | Date |