RECORD NUMBER: 17-4579

# United States Court of Appeals
## *for the*
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

AQUABEUS MOORE,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

# REPLY BRIEF OF APPELLANT

SHARNAISHA NAKI RICHARDSON-BAX
BAX LAW FIRM, PA
2 Merchants Lane
Suite 210
Beaufort, SC 29907
(843) 522-0980
naki.baxlaw@gmail.com

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

REPLY ARGUMENT .......................................................................1

    I.    Did the court err in denying Appellant's Rule 29 motion and finding that government offered evidence of prior knowledge of a gun being used in the commission of a crime for purposes of the 924(c) sentencing enhancement to go to the jury? .................................................................................2

    II.    Was the application of the 924(c) enhancement for a Hobbes Act Robbery constitutional? ................................................3

    III.    Did the court err in admitting a firearm into evidence to be presented to the jury where there was no evidence that the weapon in question was used in commission of the crime charged? ................................................................................5

    IV.    Did the court err in admitting multiple exhibits produced by law enforcement using manipulated information and generated by the government into evidence? ........................6

    V.    Did the court err in declining to grant Defendant a new trial based on the repeated misleading forensic testimony presented to the jury by the FBI's DNA expert where Defendant showed clear evidence that this testimony was also in contradiction to the FBI's protocols on accurate forensic testimony? ..........................................................................7

CONCLUSION ................................................................................7

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Henderson v. U.S.,*
568 U.S. 266, 133 S. Ct. 1121, 185 L. Ed. 2d 85 (2013) ..............................5

*Johnson v. U.S.,*
520 U.S. 461 (1997)..............................................................................4

*Ortiz-Santiago v. Barr*,
924 F.3d 956 (7th Cir., 2019) ...........................................................5

*U.S. v. Mathis,*
932 F.3d 242 (4th Cir. 2019) ...........................................................3

*U.S. v. Schooner Peggy*,
5 U.S. 103 (1801)................................................................................4

*U.S. v. Simms*,
914 F.3d 229 (2019) ........................................................................1

*United States v. Davis*,
139 S. Ct. 2319 ...............................................................................1, 3

## REPLY ARGUMENT

Since Appellant conviction there has been a significant change in the law. Appellant was convicted on 5 counts; Conspiracy to commit Hobbs Act Robbery, 2 counts of Hobbs Act robbery, and 2 violations of 924(c)s.

On June 24, 2019, the U.S. Supreme Court issued its ruling in *United States v. Davis*, 139 S.Ct. 2319. While the government's position neglects to recognize the existence of this ruling, it directly affects Appellant's appeal.

As to his conspiracy conviction, the law is clear. In *U.S. v. Simms*, 914 F.3d 229 (2019), the court found that "[w]hen a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not "categorically" a crime of violence under the force clause. Simms's offense — conspiracy to commit Hobbs Act robbery — does not categorically qualify as a crime of violence under the elements-based categorical approach, as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force. Id at 233 (2019). As such, his conviction for this charge must be reversed.

**I.     Did the court err in denying Appellant's Rule 29 motion and finding that government offered evidence of prior knowledge of a gun being used in the commission of a crime for purposes of the 924(c) sentencing enhancement to go to the jury?**

The evidence highlighted by the government does not establish the facts it purports to. The government continues to assert that the Appellant was "substantially involved in planning and orchestrating" the robberies that are the heart of the matter. There was no evidence to suggest Appellant had anything to do with the planning of what was to happen.  Rather the evidence submitted at trial pointed to someone who was taking orders from a principal, his co-Defendant, Charles Johnson.  Appellant Brief 11-12.   Even the testimony from Agent Szabo regarding Mr. Moore's statements do not illustrate his role as anything other than a stooge. JA 701  More importantly, the testimony and arguments offered  by  the government clearly show that co-Defendant Johnson had done this more than once, that the reason he came to light is for similar robberies across the country that occurred before he even met Appellant and that he directed Appellant on what he was to do, where he was to park and what he needed to obtain from the store.  None of which ties Appellant to the firearm.   JA 330-337, 701. The only tie to the gun in this matter is that he was arrested with a "similar looking" gun which was viewable only a grainy video in the hand of one of the unidentified participants in only one robbery.  There was no identification of the firearm involved in the robbery to make a comparison to the

2

firearm found on Appellant's person.  There was no comparison of the model.  There was no comparison regarding the manufacturer.  There was no information given on the caliber.  There was no comparison of barrel lengths.  There was no ammunition that could be compared. JA 686-687.

The only evidence of Appellant's knowledge of the firearm submitted to the jury was not admissible as the government for its entry into this case.

## II.     Was the application of the 924(c) enhancement for a Hobbes Act Robbery constitutional?

Two significant developments have occurred between the time of Appellant's conviction and the present time.  First the opinion issued in *United States v. Davis* and the second is the passage of the First Step Act.

"[A] vague law is no law at all". *Davis* at 2319.  The government contends that Appellant's argument was not preserved for review.  However, the Supreme Court has issued an opinion on 924(c) enhancement since Appellant's conviction finding that parts of 924(c) were unconstitutional and struck them down for vagueness.

*Davis* has struck down the language that was used by the judge and the jury. The argument that this court has now decided, in *U.S. v. Mathis,* 932 F.3d 242 (4th Cir. 2019*),* that a Hobbs Act robbery is a crime of violence is not applicable in this matter.  What was used to convict Appellant was based on a statute that is now

invalid because the Supreme Court has ruled it so.  Appellant cannot be penalized for a new reading of the law when at the time of his conviction the crime itself was not categorized as a "crime of violence".  A "crime of violence" was defined by the very clause that has been invalidated.

In the previous brief, Appellant argued about the constitutionality of the enhanced sentence that he received due to these enhancements. He received a mandatory 32-year sentence as the enhancements were stacked out of incidents contained in the same indictment.  Pursuant to  the First Step Act, "In the case of a violation of this subsection that occurs after a prior <u>conviction</u> under this subsection has become final, the <u>person</u> shall—be sentenced to a term of imprisonment of not less than 25 years."   Since Appellant did not have a qualifying "prior conviction" under this statute, he can no longer be sentenced to the aggregate 32 years and could only be eligible for the original 7-year sentence for brandishing a firearm.

"It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied." *U.S. v. Schooner Peggy, 5* U.S. 103, 110 (1801). *See also e.g. Johnson v. U.S.,* 520 U.S. 461, 467-69 (1997) (judging the correctness of the trial court's decision against a legal standard that post-dated the trial). "Generally speaking, the

obligation to apply changes in the law extends through a party's direct appeal." See *Henderson vs. U.S.*, 568 U.S. 266, 276, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013).

"It is well-established that a court generally applies the law in effect at the time of its decision, and that if the law changes while the case is on appeal the appellate court applies the new rule." *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir., 2019). As such, Appellant's second 924(c) enhancement is no longer good law and should be vacated.

### III. Did the court err in admitting a firearm into evidence to be presented to the jury where there was no evidence that the weapon in question was used in commission of the crime charged?

As Appellant has argued above, there was no evidence that the weapon submitted to the jury was indeed the weapon from the robbery. No one was able to identify the type of gun that was used in the robberies. The only connection was a visual comparison to a low resolution still taken from surveillance/security footage and that a weapon was on the Appellant's person when he was arrested weeks later. The government concedes that the admittance was prejudicial but argues that it was more probative than prejudicial. Appellant disagrees. Due to the fact that no evidence, with the exception of a grainy picture, was submitted to lay the foundation for the admissibility, the Appellant had no way to defend himself against the

allegation.  At Appellant's objection the judge merely looked at the gun and stated "close resemblance" good enough. JA 687.

### IV. Did the court err in admitting multiple exhibits produced by law enforcement using manipulated information and generated by the government into evidence?

The court allowed the government to admit specific charts signifying the alleged direction of travel with specific times and placed Appellant's phone in a specific area.  While that expert testified that the evidence could only show a range within a cell phone was operating, the chart displayed to the jury and admitted into evidence placed Appellant in a specific spot.  Government further went on to highlight avenues of travel --- on a map and extrapolated that path unto a map.  The government argued that this presentation/display was merely a "summary" of otherwise admissible evidence.  While the federal rules allow such a summary, they do not allow a witness, expert or otherwise to compile their opinion into a colorful display, regardless of whether it is based on admissible evidence or not, and send such a display back with the jury for their deliberations.  The government themselves refer to the exhibits themselves as "demonstrative exhibits". Response Brief pp. 31, 34.  Demonstrative evidence by its' very nature is demonstrative only and is not admitted in the jury room.  Therefore, it was clearly erroneous for the judge to allow the juror to use those in deliberations.

## V.     Did the court err in declining to grant Defendant a new trial based on the repeated misleading forensic testimony presented to the jury by the FBI's DNA expert where Defendant showed clear evidence that this testimony was also in contradiction to the FBI's protocols on accurate forensic testimony?

It is not every day that the FBI sends out a letter that one of their supervising agents made misstatements.  The FBI was concerned enough to issue its own letter of caution regarding her testimony.  JA 183.  Ms. LaSalle was a *supervisor* at the lab at Quantico. JA 25.  She was someone in a position of authority that gave others orders. She testified that she has been considered an expert over 35 times, yet she gave testimony that "deviated" from the standard language.  The government downplays the significance of her testimony, yet they relied on that same testimony to tie Appellant to one of the vehicles in this matter.  It should also be noted that Appellant gave a statement of to one of the robberies but not the other. Appellant did not receive a fair trial as he was not given the opportunity to fully investigate the implications of what is noted in the correspondence or have an opportunity to flesh out the misleading statements the government's expert witness testified to through cross-examination or have the opportunity to refute the evidence.

## CONCLUSION

Based on the above, the court should vacate Appellant's conviction on the conspiracy charge and reverse Appellant's other convictions and remand this matter for a new trial.

RESPECTFULLY SUBMITTED this 17th day of October, 2019.

> s/ Naki Richardson-Bax
> FEDERAL ID #: 10809
> The Bax Law Firm
> 2 Merchants Parkway Suite 210
> Beaufort, SC 29907
> Phone: (843) 522-0980
> Fax: (843) 217-5815
> ATTORNEY FOR APPELLANT

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No.  17-4579        **Caption:**  US v. Aquabeus Moore

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑  this brief or other document contains _____1,761_____ [*state number of*] words

☐  this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑  this brief or other document has been prepared in a proportionally spaced typeface using
MS Word 2016_____ [*identify word processing program*] in
Times New Roman, 14 point_____ [*identify font size and type style*]; or

☐  this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)  Naki Richardson-Bax_____

Party Name _appellant_____

Dated: _10/17/19_____

# CERTIFICATE OF SERVICE

I certify that on  10/17/19            the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Naki Richardson-Bax

Signature

10/17/19

Date